A04A1260. URIOSTEGUI v. THE STATE.
(603 SE2d 478)

MIKELL, Judge.

Following a jury trial, Jose Uriostegui was convicted of two counts of sale of cocaine (Counts 1 and 2 of the indictment) and two counts of trafficking in cocaine (Counts 3 and 4). On appeal, Uriostegui challenges the sufficiency of the evidence of his conviction under Count 4. Finding no error, we affirm.

Uriostegui was tried along with co-defendant Israel Mojica Salgado. Salgado was convicted of trafficking in cocaine and possessing cocaine. Both defendants appealed their convictions. We affirmed Salgado's conviction at *Salgado v. State*.[1] Although we set forth the relevant facts in that opinion, we include certain of them here to address appellant's involvement in the crimes.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [Uriostegui] no longer enjoys a presumption of innocence."[2] So viewed, the

---

[1] 268 Ga. App. 18 (601 SE2d 417) (2004).

[2] (Citation and punctuation omitted.) *Jackson v. State*, 252 Ga. App. 268 (1) (555 SE2d 908) (2001).

evidence shows that Agent Miguel Rivera of the Marietta-Cobb-Smyrna Police Department testified that while working undercover in March 1999, he purchased cocaine from Uriostegui on three occasions. In the first transaction, he purchased 2.4 grams of cocaine for $100; in the second, 5.1 grams for $320; and in the third, 56.1 grams for approximately $1,700. After these transactions, Agent Rivera contacted Uriostegui again to arrange a larger purchase and asked him to meet with Rivera and Sergeant Donald Minter, whom Agent Rivera referred to as his "boss." Uriostegui agreed to do so.

When they met, Rivera, interpreting for Minter, told Uriostegui that they were happy with the purchases thus far and showed him a cooler that contained $22,000, to indicate their seriousness about purchasing a kilo. Uriostegui said that he could only provide 14 ounces, which would cost $12,375, and that he would have to talk to a friend to obtain more.

When they met at a bar two days later, Uriostegui arrived with Salgado, whom he introduced as the friend he had spoken about earlier. Salgado led the discussion about the details of the drug transaction. Salgado and Agent Rivera agreed that the sale would occur at a restaurant. The agents drove Salgado and Uriostegui to Windsor Lake Apartments and gave Salgado a cooler in which to place the cocaine. Rivera explained that the money would be in a similar cooler and instructed Salgado that they would exchange the drugs for the money in a 30-second transaction.

Salgado and Uriostegui arrived at the restaurant in the back seat of a white taxicab. Rivera exited his vehicle, grabbed the cooler, walked toward the taxicab, and observed the cooler that he had given Salgado sitting between Salgado and Uriostegui. Rivera told Salgado to open the cooler so that he could see the drugs, and Salgado complied. As Rivera walked away from the taxicab, he gave his unit the takedown signal, and they surrounded Rivera and the taxicab. Rivera, Salgado, and Uriostegui were arrested. Inside the cooler were 14 bags of cocaine, weighing 397 grams. Cocaine tested from eight of the fourteen bags was forty-four percent pure.

In his sole enumeration of error, Uriostegui argues that his conviction on the trafficking charge resulting from the last drug transaction should be reversed because, though he was present at all pertinent times, he did not participate in negotiating the terms of that drug deal and was not in actual possession of the cocaine. He also contends that he did not intentionally aid or abet Salgado, so that the evidence does not support his conviction as a party to the crime. He maintains that the evidence against him was circumstantial and did not exclude every other reasonable hypothesis other than his guilt, but he offers no other reasonable hypothesis to explain his involvement in the drug transaction at issue.

We reject Uriostegui's argument that actual possession of the cocaine is required for a trafficking conviction under OCGA § 16-13-31.

> [I]n 1988, the legislature amended Chapter 13 of Title 16 of the OCGA, relating to controlled substances, . . . "to eliminate the requirement that a person be in actual possession of certain controlled substances to be guilty of certain offenses." Ga. L. 1988, p. 420. In doing so, the legislature effectively deleted the word "actual" preceding the word "possession" in paragraphs (1) and (2) of subsection (a) and in the introductory paragraphs of subsections (b) and (c) of OCGA § 16-13-31. Compare Ga. L. 1988, p. 420, § 2. This Act became effective on March 28, 1988 (Ga. L. 1988, p. [420], § 4).[3]

Because the transaction in this case occurred after 1988, the jury was authorized to convict Uriostegui upon proof of either actual or constructive possession of 28 or more grams of cocaine.[4]

> A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. A person may be convicted as a party to a crime if the evidence shows he directly committed the crime, intentionally aided or abetted the commission of the crime or intentionally advised, encouraged, hired, counseled or procured another to commit the crime.[5]

The type of possession is an issue of fact for the jury to decide.[6] Uriostegui was present when the logistics of the sale were discussed and for the actual transaction. He arrived in the taxicab with Salgado and was sitting next to the cooler of cocaine. At the very least, this evidence supports the finding that Uriostegui was in constructive possession of the cocaine.[7]

The evidence also supports Uriostegui's conviction as a party to

---

[3] *Williams v. State*, 199 Ga. App. 566, 570 (4) (405 SE2d 716) (1991).

[4] *King v. State*, 203 Ga. App. 287, 289 (3) (416 SE2d 842) (1992). Accord *Meridy v. State*, 265 Ga. App. 440, 441 (1) (594 SE2d 378) (2004).

[5] (Punctuation and footnotes omitted.) *Meridy*, supra at 441-442 (1).

[6] *Williams*, supra.

[7] See *Reed v. State*, 244 Ga. App. 146-147 (534 SE2d 871) (2000) (circumstantial evidence that passengers in car had equal access to cocaine was sufficient to support finding that they were in joint, constructive possession of the cocaine).

the crime of trafficking cocaine.[8] Uriostegui introduced Salgado to Agent Rivera in order to facilitate the transaction. There was no evidence that Agent Rivera had any contact with Salgado, other than through Uriostegui. Consequently, but for Uriostegui's involvement, a jury could reasonably conclude that the drug sale would not have occurred. Therefore, the evidence authorized the jury to find beyond a reasonable doubt that Uriostegui aided and abetted Salgado and procured his involvement in the transaction, in violation of OCGA § 16-2-20.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 10, 2004.

*Daniel L. Henderson*, for appellant.

*Patrick H. Head, District Attorney, Samuel W. Lengen, Amelia G. Pray, Assistant District Attorneys*, for appellee.

---

[8] See *Williams*, supra at 566-568 (1) (sufficient evidence of the defendant's guilt as a party to trafficking cocaine where the defendant arranged and was present at the drug sale though he did not obtain or handle the cocaine).