## A05A1852. MOSS v. THE STATE.
### (629 SE2d 5)

MIKELL, Judge.

Raymond Eugene Moss was convicted of trafficking in cocaine and was sentenced to serve ten years in prison. On appeal from the order denying his motion for a new trial, Moss argues, *inter alia,* that the evidence does not support his conviction and that his trial counsel rendered ineffective assistance. We disagree and affirm.

> On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence, and the appellate court views the evidence in the light most favorable to the verdict. We do not weigh the evidence or determine witness credibility. As long as there is some competent evidence, even though contradicted, from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt, we must affirm the judgment on the jury's verdict.[1]

Viewed in its proper light, the evidence adduced at trial shows that on September 26, 2001, Frank McCann, who is employed by the Cartersville Police Department but investigates major drug distribution organizations for the Drug Enforcement Administration ("DEA") task force in Atlanta, arranged for a confidential informant ("CI") to attempt to purchase a quarter kilogram of cocaine in Marietta. Nine DEA agents accompanied McCann as he tracked the CI to a residence at the corner of North Marietta Parkway and Fairground Street. The CI went inside and stayed about eight minutes. He left with a man later identified as Antwon Williams. The DEA agents followed them to a gas station, where Williams got out of the CI's car and met briefly with Moss. Moss walked back to the Marietta residence, while Williams and the CI drove there. The house was under surveillance for four hours. At the end of that period, a silver Lumina drove up, and Moss, Williams, and the CI got into it. The CI then emerged, got into his car, and called McCann, who instructed him to meet the agent at a specific location. The CI brought the agent 120 grams of cocaine.

---

[1] (Footnotes omitted.) *Dempsey v. State,* 265 Ga. App. 175 (1) (593 SE2d 362) (2004).

McCann testified that he knew that the CI did not have the drugs beforehand because an agent searched his person and his car before and after the transaction with Moss. McCann further testified that he gave the CI $5,000 to make the purchase and that the CI paid $3,300 for the cocaine, gave Williams $100 for brokering the deal, and returned $1,600 to McCann.

The testimony of the CI, whose identity was revealed at trial, was consistent with that of McCann. According to the CI, when Moss returned to the residence from the gas station, he told the CI that he had ordered the drugs. The men waited outside for the drug dealer to arrive. When the silver Lumina arrived, Moss entered the front passenger seat, and Williams and the CI sat in the back. The driver handed Moss a large bag containing smaller bags of narcotics. Moss separated the bags and asked the CI for money. The CI paid Moss, and Moss handed him a bag of cocaine. The CI left, met the DEA agents, and handed McCann the drugs. Williams was killed in Atlanta at a later date.

1. Moss argues that the evidence does not support his conviction, essentially contending that the CI's testimony was not sufficiently corroborated. This argument fails for two reasons. First, the testimony of a single witness generally is sufficient to establish a fact.[2] Second, although a defendant in a felony case cannot be convicted solely on the uncorroborated testimony of an accomplice, an informant who assists and cooperates with a law enforcement agency in gathering evidence against the defendant is not an accomplice.[3] Therefore, the CI was not an accomplice, and corroboration of his testimony was not required. Finally, even if corroboration had been necessary, it was supplied by McCann's testimony and that of a second DEA agent, Jeffrey Dean Shelton. Shelton testified that he was stationed 50 to 100 yards away from the Marietta residence, that he had a clear view of the premises, and that the CI was under constant surveillance. Prior to the time the CI entered the Lumina, Shelton did not see anyone pass anything to the CI, and after the informant exited the vehicle, Shelton observed that he had something in his hands. Shelton then saw the CI get into his car and leave. Moreover, as noted above, the CI was searched before the transaction and no drugs were found on him, and the amount of money he possessed after the deal was consistent with what he told McCann he paid for the cocaine. "Slight evidence from an extraneous source identifying the defendant as a participant in the crime is all that is

---

[2] OCGA § 24-4-8.

[3] *Knight v. State*, 241 Ga. App. 811, 812 (528 SE2d 258) (2000), citing *Marshall v. State*, 98 Ga. App. 429, 433 (2) (105 SE2d 748) (1958).

required to support the verdict, and it may be entirely by circumstantial evidence."[4] The circumstantial evidence corroborated the CI's testimony, and the evidence was sufficient for any rational trier of fact to find Moss guilty of trafficking in cocaine beyond a reasonable doubt.[5]

2. Moss asserts that his trial counsel was ineffective for the following reasons: failing to object to the introduction of evidence of his character; failing to object to the prosecutor's closing argument; and failing to object to the trial court's instruction to Moss concerning his right to testify. To establish an ineffective assistance claim, an appellant must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the outcome of the trial would have been different but for counsel's errors.[6] Failure to satisfy either prong of this two-part test is fatal to an ineffectiveness claim.[7] Further, counsel's performance must not be evaluated in hindsight, and a strong presumption exists "that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy."[8] Bearing these principles in mind, we examine Moss' claim.

(a) At the beginning of trial, defense counsel made a motion in limine asking the state to instruct its witnesses not to testify concerning Moss' criminal history or any of his allegedly illegal activities. The court granted the motion. However, Moss claims that during the trial, the state and its witnesses made several references to his character, that trial counsel failed to object to those references, and that such failure constitutes ineffective assistance. We disagree. The remarks about which Moss first complains on appeal concern Williams. During opening statements, the prosecutor portrayed Williams as the middleman and Moss as the dealer. The prosecutor further stated that Williams threatened to pat down the CI and that the CI had to remove his recording device so that he did not "wind up like Antwon Williams is now." Moss asserts that trial counsel should have objected to this argument because it suggested that Moss was a violent person. However, at the hearing on the motion for new trial, trial counsel testified that part of his trial strategy was to show that Williams was the drug dealer, so that any evidence of Williams' bad

---

[4] (Citations omitted.) *Knight,* supra.

[5] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[6] *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[7] *Jones v. State,* 236 Ga. App. 716, 718 (3) (513 SE2d 254) (1999).

[8] (Citations and punctuation omitted.) *Wynn v. State,* 228 Ga. App. 124, 127 (3) (491 SE2d 149) (1997).

character that was introduced fit into his strategy. "A strong presumption exists that representation has been effective, and trial strategy and tactics do not establish ineffective assistance."[9]

Moss further complains that trial counsel did not object when the CI testified that Moss was involved in an armed robbery, that the Federal Bureau of Investigation had intercepted a conversation between Moss and others concerning someone putting a "hit" on the CI in exchange for $100,000, and that Moss stole money from the CI. However, the CI also testified that he had been angry at Moss and that there was animosity between them. Trial counsel testified that his ability to show that the CI had a grudge against Moss was part of his trial strategy. "Substantial latitude is given during judicial review of trial counsel's decisions regarding trial strategy."[10] "Tactical decisions regarding what objections to make do not amount to ineffective assistance."[11] It follows that trial counsel was not ineffective for failing to object to the introduction of character evidence.

(b) Trial counsel was not deficient for failing to object to that portion of the prosecutor's closing argument concerning the sufficiency of the evidence to convict Moss as a party to the crime. First, the prosecutor stated that the court would charge the jury on party to a crime, then he argued the law: "If you directly commit it, if you helped to commit it, even if you advised, encouraged or procured someone to commit it, you are guilty of the same crime." This statement was correct. "A person may be convicted as a party to a crime if the evidence shows he directly committed the crime, intentionally aided or abetted the commission of the crime or intentionally advised, encouraged, hired, counseled or procured another to commit the crime."[12] The prosecutor then made the following statements: "Even if you buy the argument that he was just there, even if you think he just let them use his yard to sell a quarter kilo in, even if you think he was just hanging out in the yard with them . . . to see what was going on, . . . he's still guilty." Moss argues that these comments urged the jury to convict him based on his mere presence at the scene. "Mere presence, without proof of participation, is insufficient to support a conviction. Rather, the state must show that the defendant

[9] (Punctuation and footnote omitted.) *Horne v. State*, 273 Ga. App. 132, 133 (4) (614 SE2d 243) (2005).

[10] (Citation and punctuation omitted.) *Rivers v. State*, 271 Ga. 115, 118 (2) (b) (516 SE2d 525) (1999).

[11] (Citation omitted.) *Bogan v. State*, 255 Ga. App. 413, 415-416 (3) (b) (565 SE2d 588) (2002).

[12] (Footnote omitted.) *Uriostegui v. State*, 269 Ga. App. 51, 53 (603 SE2d 478) (2004). See also OCGA § 16-2-20.

had the power and intent to exercise control over the cocaine."[13] Trial counsel testified at the hearing on the motion for new trial that he did not object to the comments at issue because he believed that the general implication of the argument was that Moss could not be convicted unless he was involved. Further, trial counsel stated that he sometimes refrained from objecting because "if you are over anxious objecting . . . a jury will get a sense that a defense has something to hide. And, secondly . . . if you object to it, you bring more attention to it." Accordingly, "[t]he trial court was authorized to find that the decision not to object was reasonable trial strategy."[14] Finally, we note that the court fully charged the jury on the law of party to a crime, mere presence and mere association. Therefore, even if counsel's failure to object could be considered deficient, it did not prejudice the jury.

(c) Lastly, Moss contends that his trial counsel was deficient by failing to object to the trial court's instruction to Moss concerning his right to testify. In this regard, the trial court advised Moss as follows:

> [T]he law requires me to inform you that you have a right to testify knowing that anything you say can be used against you. The decision whether to testify or not to testify is your decision alone. Your attorney has announced that you do not wish to testify. And all I can do is tell you to follow the advice of your attorney or listen to the advice of your attorney but to realize in the end that [the] decision [whether] to testify is solely yours. You understand that?
> The defendant: Yes sir.
> The Court: And is it your position at this time that you are not testifying?
> The defendant: Yes sir.

Moss argues that the trial court gave him conflicting advice and incorrectly emphasized that he should follow his attorney's advice. This claim fails for two reasons. First, "the trial judge has no duty to advise a defendant of the right to testify or to ascertain on the record whether the defendant's waiver of that right is voluntary, knowing, and intentional."[15] Rather, such an on-the-record colloquy with a defendant is simply a "better practice."[16] Here, the court engaged in the "better practice." Therefore, counsel was not deficient for failing

---

[13] (Footnote omitted.) *Stevens v. State*, 245 Ga. App. 237, 238 (1) (537 SE2d 688) (2000).

[14] (Citation omitted.) *Allen v. State*, 272 Ga. 513, 516 (6) (b) (530 SE2d 186) (2000). See also *English v. State*, 260 Ga. App. 620, 625 (4) (b) (580 SE2d 351) (2003).

[15] (Citation omitted.) *Burton v. State*, 263 Ga. 725, 728 (6) (438 SE2d 83) (1994).

[16] *Barron v. State*, 264 Ga. 865, 866 (2), n. 2 (452 SE2d 504) (1995).

to object. Second, "[t]rial counsel, and not the trial court, is primarily responsible for advising a defendant of his fundamental constitutional right to testify in his own behalf."[17] In any event, Moss cannot show prejudice because he did not testify at the hearing on the motion for new trial. Absent evidence that he would not have waived his right to testify if he had been advised differently, this claim of ineffectiveness fails.[18]

3. In his fourth enumeration of error, Moss argues that the trial court erred by failing to order the court reporter to transcribe several bench conferences. Specifically, Moss contends that the absence of a complete transcript precluded him from ascertaining whether errors were made during bench conferences, so that he is entitled to a new trial. Moss relies on OCGA § 5-6-41 (a), which provides that "[i]n all felony cases, the transcript of evidence and proceedings shall be reported and prepared by a court reporter," and subsection (d), which states in pertinent part:

> Where a trial in any civil or criminal case is reported by a court reporter, all motions, colloquies, objections, rulings, evidence, whether admitted or stricken on objection or otherwise, copies or summaries of all documentary evidence, the charge of the court, and all other proceedings which may be called in question on appeal or other posttrial procedure shall be reported; and, where the report is transcribed, all such matters shall be included in the written transcript, it being the intention of this article that all these matters appear in the record. Where matters occur which were not reported, such as objections to oral argument, misconduct of the jury, or other like instances, the court, upon motion of either party, shall require that a transcript of these matters be made and included as a part of the record.

Appellate counsel filed a motion for a complete transcript, or in the alternative, a new trial. At the hearing on Moss' motion, trial counsel testified that he believed that he and the prosecutor approached the bench for the following reasons: (1) to discuss the fact that several potential jurors knew the Moss family; (2) to discuss a scheduling matter; (3) to discuss the prosecutor's concern about the CI testifying because his identity had been revealed; (4) to ask for a break in the proceedings; and, finally, (5) to break for lunch. Although counsel did not recall these matters with 100 percent certainty, he

---

[17] (Footnote omitted.) *Blue v. State*, 275 Ga. App. 671, 676 (5) (621 SE2d 616) (2005).
[18] See *Moody v. State*, 277 Ga. 676, 681 (6) (d)-(e) (594 SE2d 350) (2004).

testified on cross-examination that it was his practice to put on the record any ruling that was made at a bench conference, and that he did not recall any bench conference concerning any evidentiary issue or any matter other than scheduling. Based on the testimony of trial counsel and the court's own recollection, the trial court found that the bench conferences that were not transcribed dealt only with scheduling and logistical matters. "The trial court's findings of fact on motion for new trial are upheld unless clearly erroneous."[19] As the evidence adduced at the hearing supports the trial court's findings of fact, we find no clear error in the denial of Moss' motion for complete transcript/motion for new trial.[20] Nevertheless, we note that it is the better practice for the trial court to require that all matters be recorded and transcribed, particularly in light of the mandate in OCGA § 5-6-41 (d) that all colloquies shall be reported.

Finally, *Montford v. State*,[21] upon which Moss relies, does not require that he be granted a new trial. In *Montford*, the court reporter who took down the transcript left the court's employ before preparing the transcript and thereafter refused to do so. Several years later, the trial court ordered a different court reporter to prepare a transcript, but the tapes were very difficult to understand, and the court reporter was unable to transcribe the voir dire, opening statements, closing arguments, portions of the court's charge, and other portions of the record.[22] Affidavits of trial counsel and the trial judge could not fill in the missing portions. We recognized that "the failure of the state to file a correct transcript, through no fault of the appellant, effectively deprives the defendant of his right to appeal."[23] Moreover, under the circumstances present in *Montford*, where the transcript could not be produced in accordance with the trial court's order, we held that there was no recourse other than to grant the defendants a new trial.[24] The circumstances in *Montford* are wholly different from those in the case at bar, where trial counsel and the court did not recall any rulings made during the bench conferences that were not transcribed. Therefore, Moss' reliance on *Montford* is misplaced.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[19] (Citation and punctuation omitted.) *Lewis v. State*, 277 Ga. 534, 539 (3) (592 SE2d 405) (2004).

[20] See id. ("A trial court's denial of a motion for new trial will not be reversed unless it affirmatively appears that the court abused its discretion.") (citation and punctuation omitted).

[21] 164 Ga. App. 627 (298 SE2d 319) (1982).

[22] Id. at 628.

[23] (Citation omitted.) Id. at 629.

[24] Id.

DECIDED JANUARY 19, 2006 —
RECONSIDERATION DENIED MARCH 23, 2006.

*Michael H. Saul*, for appellant.
*Patrick H. Head*, District Attorney, *C. Lance Cross, Dana J. Norman*, Assistant District Attorneys, for appellee.