## A08A1685. NEJAD v. THE STATE.
(674 SE2d 60)

MIKELL, Judge.

A Fulton County jury convicted Ali Nejad of rape, aggravated sodomy, aggravated assault with a deadly weapon (two counts), and aggravated battery (two counts). Nejad was also indicted on the charge of possession of a firearm during the commission of a felony, but the trial court directed a verdict on that count. On appeal, Nejad argues that his convictions must be reversed for three reasons: (1) the trial court erroneously charged the jury that a pellet gun was a per se deadly weapon; (2) a juror failed to disclose that she was a rape victim; and (3) trial counsel was ineffective. Although we find that there was sufficient evidence to support Nejad's convictions under *Jackson v. Virginia*,[1] we must reverse the convictions because trial counsel provided ineffective assistance when he refused to allow Nejad to testify and did not inform Nejad that he had a right to do so. We also find error in the trial court's charge to the jury that a pellet gun was a per se deadly weapon.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.[2]

So viewed, the record shows that there were two alleged victims of the crimes for which Nejad was tried, Linda Lankford and Melissa Hoy. Lankford testified that on May 11, 2004, she was talking to Nejad at a gas station, and he offered her a ride to the hotel where she was staying. Lankford recalled that Nejad was driving a SUV and that there was a baby car seat in the back of the vehicle. During the ride, Nejad offered her $200 in exchange for sex or an agreement to masturbate him, and Lankford refused, telling Nejad that she was not a prostitute. Lankford recalled that they also talked about smoking marijuana and that Nejad told her that he and his friends smoked behind a building where he worked. After purchasing baby wipes from a grocery store, Nejad drove Lankford to a secluded area where he parked the SUV near a factory, which Lankford assumed was Nejad's place of employment. Nejad then pointed a gun at Lankford, demanded that she take off her clothes and put on panty-

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Citation omitted.) *Brown v. State*, 293 Ga. App. 633 (667 SE2d 899) (2008).

hose with a hole in the crotch area, and made her perform oral sex on him, while pointing the gun at the back of her head. Nejad also had intercourse with Lankford after ordering her to remove a tampon from her body. Nejad then ejaculated on Lankford's stomach and gave her a baby wipe to clean up. Lankford recalled that the gun was pointed at her face while they had intercourse. When they were done, Nejad ordered Lankford to exit his vehicle, naked with her clothes in her hand. Lankford dressed herself with the clothes that she could find and then ran to a nearby building where she banged on the door and told the people inside to call the police because she had been raped.

David Vance, a supervisor at the building, testified that Lankford was pounding on the door and was hysterical as she screamed and hollered that she had been raped. Detective Lisa Roey of the Atlanta Police Department testified that she responded to the scene and interviewed Lankford. Lankford told her that she agreed to accept $200 from Nejad to watch him masturbate because she needed the money as she was new to Atlanta. When Roey went to the scene of the crime, she found Lankford's identification, hotel room key, pictures of Lankford's children, a tampon, and some baby wipes.

Melissa Hoy testified that she was a prostitute and that she voluntarily entered Nejad's white SUV on June 5, 2004, after Nejad offered her $150 to perform sexual acts. Nejad gave her thigh-high nylon stockings to wear and drove to a secluded area. Hoy further testified that once Nejad stopped the vehicle, he took a backpack and a black gun from the back of the vehicle, which was later determined to be a plastic pellet gun, put the baby car seat into the back of the vehicle, and told Hoy to get into the back seat. Nejad urinated and then got into the back seat with Hoy. When asked why she did not run away, Hoy testified that she could have but that "it was a job." Nejad fondled and digitally penetrated Hoy's anus and vagina while holding the gun, then put the gun down while he masturbated. Over two hours later, Nejad ejaculated, using Hoy's clothing to clean up the semen. Nejad gave Hoy her clothes and told her to exit the vehicle and said he would leave $100 on the concrete at the end of the street. Hoy never looked for the money. Instead, she dressed herself then walked to a nearby restaurant where she called a client, who picked her up and with whom she had sex in exchange for money. Weeks later, Hoy spoke to another prostitute to warn her about the driver of the white SUV, and that person advised that she already knew about him.

At trial, Nejad stipulated that the semen from Hoy's shirt contained his DNA as did the assault kit performed on Lankford. When Nejad was arrested, a plastic pellet gun, which looked like a Glock handgun, was found in his vehicle.

1. Nejad argues that his convictions must be reversed because of his trial counsel's ineffectiveness in refusing to allow Nejad to exercise his constitutional right to testify at trial.

> In order to prevail on a claim that trial counsel was ineffective, a defendant must show both that counsel's performance was deficient and that this deficient performance prejudiced the defense. A claim of ineffective assistance of counsel is a mixed question of law and fact: we accept the trial court's factual findings unless clearly erroneous, but we independently apply the legal principles to the facts.[3]

We address first the question of whether counsel's performance was deficient.

During the hearing on the motion for new trial, trial counsel unequivocally stated on several occasions that he told Nejad that he was not testifying; that he ordered Nejad to inform the court that he was not going to testify; that he told Nejad that he ruled with an iron fist and that Nejad would have to do as instructed; that Nejad's family asked about him testifying to explain the situation with the gun and he told them that Nejad was not testifying; and that he did not advise Nejad of his right to make the final decision about testifying at trial. Trial counsel testified that he was proud of his reputation, but that he wrongfully made the decision about whether Nejad would testify. Trial counsel also explicitly recalled that the trial judge did not advise Nejad of his right to testify.

Investigator Nicholas McKnight testified that he attended a meeting with Nejad and trial counsel in which Nejad expressed his desire to testify and trial counsel replied that under no circumstances would Nejad be allowed to testify. McKnight also recalled that during that meeting, trial counsel did not inform Nejad of his right to testify. Two attorneys assisted trial counsel in the trial of the case, and both testified that they neither advised Nejad that he was the person who would ultimately decide whether he would testify nor heard anyone else explain this right to Nejad, including the trial judge. The prosecutor testified that she specifically recalled the trial judge reading Nejad the standard admonition about testifying or not testifying and that a couple of months before the new trial hearing, Nejad's defense counsel acknowledged to her that he remembered the judge's admonition as well even though it was not recorded in the transcript. There is a stipulation in the record, however, that the

---

[3] (Citations omitted.) *Muller v. State*, 284 Ga. 70, 71 (3) (663 SE2d 206) (2008).

trial judge reviewed his notes from the trial and stated that there was no indication in his notes that he ever advised Nejad of his right to testify.

> In *Rock v. Arkansas*, 483 U. S. 44 (107 SC 2704, 97 LE2d 37) (1987), the United States Supreme Court recognized that a criminal defendant has a constitutional right to testify in his own defense. Defense counsel bears the primary responsibility for advising the defendant of his right to testify and the strategic implications of this choice, as well as for informing the defendant that the decision whether to testify is his to make. This advice is crucial because in the absence of an intentional relinquishment or abandonment of a known right or privilege, there can be no effective waiver of a fundamental constitutional right.[4]

Therefore, the duty to inform a defendant of this right rests with trial counsel, not with the trial court. Georgia courts have held that the trial judge has no duty to advise a defendant of the right to testify or to ascertain on the record whether the defendant's waiver of that right is voluntary, knowing, and intentional because the decision is considered a tactical one to be made by the defendant himself after consultation with his attorney.[5]

In our review of Georgia case law, we have found no decisions in which defense counsel adamantly refused to allow a defendant who wished to testify the opportunity to do so and failed to advise the defendant of the right to do so.[6] However, we found the Eleventh Circuit's discussion of the right to testify in *United States v. Teague*[7] instructive on this point.

> When an individual stands accused of criminal conduct, the choice to tell his side of the story has ramifications far beyond the more immediate goal of obtaining an acquittal.

---

[4] (Citations and punctuation omitted.) *Thomas v. State*, 282 Ga. 894, 896 (2) (b) (655 SE2d 599) (2008).

[5] See *Burton v. State*, 263 Ga. 725, 728 (6) (438 SE2d 83) (1994). Accord *Moss v. State*, 278 Ga. App. 362, 366 (2) (c) (629 SE2d 5) (2006) (such a colloquy by the trial judge is simply a "better practice").

[6] Compare *Mayberry v. State*, 281 Ga. 144, 146 (3) (635 SE2d 736) (2006) (ineffective assistance of counsel claim failed where there was no testimony that trial counsel failed to inform the defendant of his constitutional rights or the risks of testifying at trial); *Moss*, supra (ineffectiveness claim fails in absence of defendant's testimony that he would not have waived his right to testify had he been advised differently by counsel); *Giddens v. State*, 276 Ga. App. 353, 357 (3) (b) (623 SE2d 204) (2005) (ineffectiveness claim fails where record belies defendant's contention that trial counsel did not adequately advise him of his right to testify).

[7] 953 F2d 1525 (1992).

It is, after all, the *defendant's* day in court. The decision to take the stand in his own defense, like the decision to plead not-guilty and proceed to trial, provides the defendant with an opportunity directly to meet the charges against him. "The wisdom or unwisdom of the defendant's choice does not diminish his right to make it." By exercising his constitutional right to the *assistance* of counsel, a defendant does not relinquish his right to set the parameters of that representation. Any other conclusion would be "to imprison a man in his privileges and call it the Constitution."[8]

The circuit court concluded that the right to testify "is personal to the defendant and cannot be waived either by the trial court or by defense counsel. . . . A criminal defendant cannot be compelled to remain silent by defense counsel."[9]

Nejad indicated at the motion for new trial hearing that he was compelled to remain silent. Specifically, he testified that he repeatedly told his trial counsel that he wanted to testify both before trial and during the trial, but his attorney would not allow him to do so; that his trial counsel never told him that the final decision about whether to testify was his; that he believed that the decision was to be made by his lawyer; that no one ever explained that it was his decision, including the court; and that had he known it was his right to testify, he would have exercised that right. Accordingly, based on the testimony of defense counsel and Nejad, we find that trial counsel's refusal to allow Nejad to testify and failure to advise Nejad of his right to testify constituted deficient performance and that Nejad has shown that this failure prejudiced his defense.

When asked what his testimony would have been at trial, Nejad testified that on the night in question, he drove to an area where he knew he could find prostitutes; that Lankford approached his car, they talked, and he agreed to give her a ride; that Lankford asked him if he were a cop and when he said he was not, told him it would be $200 for everything; that he purchased condoms, pantyhose, and snacks for Lankford; and that when Lankford asked him about the pantyhose, he told her that he thought they were sexy. Nejad further testified that Lankford voluntarily performed oral sex on him and then when they were about to have intercourse, told him that she

---

[8] (Citation omitted; emphasis in original.) Id. at 1533, citing *Adams v. United States ex rel. McCann*, 317 U. S. 269, 280 (63 SC 236, 87 LE 268) (1942).

[9] *Teague*, supra at 1532. In that case, the court held that trial counsel had not provided ineffective assistance of counsel in light of the defendant's testimony that he was advised of his right to testify, that he was advised not to testify, and that trial counsel did not tell him that she would not allow him to testify. Id. at 1529, 1535.

was on her period, which annoyed him; that Lankford assured him that it would not be a problem but asked for a napkin to remove her tampon, and he gave her a baby wipe; that he decided he no longer wanted to have sex with Lankford after watching her remove the tampon; and that he asked Lankford for half of the money back, and she refused. Nejad recalled that he exited the car to fix his clothes then saw Lankford jump out with only her shirt on and the rest of her clothes in her hand and run across the parking lot and that he yelled at her that he would send the cops to her hotel. Nejad then left the scene after throwing Lankford's personal items from the window. Nejad testified that he told his trial counsel what happened. He denied that he committed any of the acts for which he was charged against Lankford.

Regarding the second victim, Hoy, Nejad testified that he picked her up from the same area; that Hoy asked him to stop and buy her some doughnuts and he complied; that they went to a secluded location where she willingly performed oral sex on him in exchange for $40; and that she asked him to drop her off at a hotel, which he did. Again, Nejad denied that he committed any of the indicted offenses or that he had a replica of a gun. When asked about the fact that both women talked about a gun, Nejad explained that he kept a pellet gun in his glove compartment, which is where he kept his money clip, so both women would have seen it when he retrieved his money clip and both women were left alone in his car at some point. Nejad maintained that he never removed the pellet gun from the glove compartment. Nejad also testified that on the night that Hoy claims she was assaulted by him, he was with his wife and friends at a club. One of the friends and Nejad's wife at the time of the incident both testified that they were with Nejad on that night.[10]

"Issues regarding the credibility of witnesses [remain] in the sole province of the jury."[11] In this case, the jury heard the testimony of the victims and Nejad's stipulation that the physical evidence contained his DNA but did not hear from Nejad that the sexual acts involved were consensual. A defendant's testimony could be crucial in any trial, and as an appellate court, we cannot conclude that the jury would not have found Nejad's testimony credible, and thus the error was harmless.[12] Therefore, despite the evidence against Nejad, we cannot ignore the violation of his constitutional right to testify

---

[10] Nejad and his wife were divorced at the time of the hearing.

[11] (Citation and punctuation omitted.) *Taylor v. State*, 253 Ga. 727, 729 (1) (324 SE2d 460) (1985).

[12] See *Luce v. United States*, 469 U. S. 38, 42 (III) (105 SC 460, 83 LE2d 443) (1984) ("[An] appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying.").

and must reverse the convictions due to trial counsel's ineffectiveness.

2. We also address briefly Nejad's argument that the trial court erroneously charged that "a pellet gun in the shape of an automatic weapon is per se a deadly weapon." As we held in *Moore v. State*[13] in which an air rifle (pellet gun) was admitted into evidence, "[a]lthough a firearm is apparently a deadly weapon per se, the 'deadliness' issue in regard to an air rifle is for the jury."[14] Counts 3 and 5 of the indictment specifically charged Nejad with aggravated assault with a deadly weapon. It is well established that when a weapon is not a per se deadly weapon, it may become one depending on the manner and means by which it was used, but that question is for the jury to resolve.[15] Because the court's charge removed this issue from the jury's province, we find the charge was erroneous.

3. We need not address Nejad's remaining enumerated error as it will not recur upon retrial.

*Judgment reversed. Adams, J., concurs. Smith, P. J., concurs specially.*

SMITH, Presiding Judge, concurring specially.

I concur fully in the majority opinion, but write separately to point out an area of increasing concern in claims of ineffective assistance of counsel. Trial counsel's testimony in this case demonstrates a worrisome trend with serious implications for the bar and the administration of justice.

Taking the record on appeal at face value, we are presented with several possible and equally questionable explanations for trial counsel's testimony at the hearing on the motion for new trial. Trial counsel may, despite his many years of experience, simply have been unaware of the well-established rule of law governing a defendant's right to testify. Or he may have in fact so instructed his client in order to provide a ready-made reversible error on appeal in the event of a conviction. Or he may have testified untruthfully at the hearing on the motion for new trial in order to provide his former client with a basis for reversal of his conviction.

---

[13] 169 Ga. App. 24 (311 SE2d 226) (1983).

[14] (Citation omitted.) Id. at 27 (6).

[15] See *Turner v. State*, 281 Ga. 487, 489 (1) (b) (640 SE2d 25) (2007) (whether an automobile was used as a deadly weapon is for the jury to resolve); *Flores v. State*, 277 Ga. 780, 783 (3) (596 SE2d 114) (2004) (charge that a pellet gun *could* be a deadly weapon is appropriate); *Johnson v. State*, 246 Ga. App. 109, 111 (2) (539 SE2d 605) (2000) ("jurors are entitled to use their own common sense as intelligent human beings on many questions. . . . And the nature of a 'weapon' is a question of fact for the jury; for example, we have held that whether or not a pocket knife constituted a deadly (or offensive) weapon was properly for the jury's determination") (citations omitted).

None of these possibilities, which are by no means exhaustive, reflects well upon trial counsel. Whether he is so incompetent as to call into question his ability to continue in this area of practice, or whether he has conducted himself in such a manner as to perpetrate a fraud upon the court, is not for us to say. But we view any of these possibilities with alarm. The trial court was similarly concerned, asking trial counsel, "Don't you think you have some responsibility to the system?"

Typically, trial counsel in such situations testify primarily to the factual details of their conduct and decisions, and admit errors only with reluctance and with due regard for their professionalism and pride in their work. The developing trend of emphatically and even eagerly testifying to one's own incompetence or misconduct is dangerous to the administration of justice, particularly if it is allowed to continue without any consequences for the testifying trial counsel.

DECIDED FEBRUARY 18, 2009 

*Brian Steel*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.