## S09G1015. THE STATE v. NEJAD.
(690 SE2d 846)

BENHAM, Justice.

Appellee Ali Nejad was tried in Fulton County and convicted of various sexual offenses as well as assault with a deadly weapon and aggravated battery. The trial court[1] denied Nejad's motion for new trial based on ineffective assistance of counsel, finding that Nejad

> failed to prove prejudice from any failure of trial counsel to properly define his right to testify, inasmuch as the credible evidence at the hearing shows that Mr. Nejad was in fact so informed by the trial court that the ultimate decision whether to testify was his alone, made after hearing the advice of his attorneys.

The Court of Appeals reversed the judgment of conviction based on its finding that Nejad had received ineffective assistance of counsel. *Nejad v. State*, 296 Ga. App. 163 (1) (674 SE2d 60) (2009). The appellate court also determined the trial judge had erred when he instructed the jury that a pellet gun was a deadly weapon per se. Id. at Division 2. We granted the State's petition for a writ of certiorari to the Court of Appeals and asked the parties to address whether the appellate court erred in reversing the trial court's determination that Nejad had been advised of his right to testify and in finding error in the giving of the per se deadly weapon jury instruction. For the reasons that follow, we conclude the Court of Appeals erred in making both rulings, and we reverse the judgment entered by the Court of Appeals.

1. Following Nejad's employment of post-conviction counsel and the filing of a motion for new trial contending trial counsel had rendered ineffective assistance, the trial court conducted a hearing at which Nejad testified that his lead trial counsel had not informed

---

[1] Judge Jerry W. Baxter heard the post-conviction motion after the trial judge, T. Jackson Bedford, Jr., on motion of Nejad, recused himself from further participation in Nejad's case. The term "trial court" will refer to Judge Baxter while the term "trial judge" will refer to Judge Bedford.

Nejad of his right to testify and had refused to permit Nejad to testify at his trial despite Nejad's desire to do so.[2] Lead trial counsel testified at the hearing and admitted he had engaged in the conduct to which Nejad had testified. Compare *Finch v. State*, 287 Ga. App. 319 (1) (b) (651 SE2d 478) (2007) (where defendant testified that trial counsel did not consult with him about his right to testify and trial counsel testified that he and the defendant had discussed the right to testify and the defendant had decided not to testify). The assistant district attorney who prosecuted Nejad testified at the hearing that she had a vivid recollection of the trial judge informing Nejad that he had the right to testify and that it was Nejad's decision whether to exercise that right, and of Nejad waiving that right; Nejad and his trial counsel testified at the hearing that the trial judge did not so advise Nejad. Another of Nejad's trial attorneys testified that the attorneys representing Nejad were in agreement it was not in his best interest to testify and that the attorney originally thought the trial judge had made Nejad aware of his right to testify because "that was consistent with normal practice." The attorney testified that while he could not say it did not happen, his recollection did not support that it had happened. The third defense attorney testified it was "a general practice of most courts" to ensure the non-testifying defendant was aware of his right to testify, but he had no specific memory of the trial court engaging in such a colloquy with Nejad.

The transcript of Nejad's trial certified by the court reporter does not reflect that the trial judge informed Nejad of his right to testify and that the decision whether to testify was to be made by Nejad after consulting with counsel. Compare *Upton v. Parks*, 284 Ga. 254 (3) (664 SE2d 196) (2008) (noting trial transcript colloquy in which trial court explained to the defendant he had the right to testify, that it was his decision, and that he was not required to follow counsel's advice on the matter).[3] The transcript of the hearing on the

---

[2] A criminal defendant has a constitutional right to testify in his or her defense, that right is personal to the defendant, and the decision whether to testify is made by the defendant after consultation with counsel. *Mobley v. State*, 264 Ga. 854 (2) (452 SE2d 500) (1995), citing *Rock v. Arkansas*, 483 U. S. 44 (107 SC 2704, 97 LE2d 37) (1987), and *United States v. Teague*, 953 F2d 1525 (11th Cir. 1992).

> Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide. This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an "intentional relinquishment or abandonment of a known right or privilege." [Cit.]

*Mobley v. State*, supra, 264 Ga. at 856, quoting *Johnson v. Zerbst*, 304 U. S. 458, 464 (58 SC 1019, 82 LE 1461) (1938).

[3] There is no requirement in Georgia that the trial court engage in an on-the-record colloquy with a non-testifying defendant to inform the defendant of the right to testify and to obtain a knowing and intelligent waiver of that right. *Burton v. State*, 263 Ga. 725 (6) (438 SE2d 83) (1994). See also *Coonce v. State*, 171 Ga. App. 20 (3) (318 SE2d 763) (1984) (under

motion for new trial makes it clear that the State's position was that the certified trial transcript did not fully disclose what transpired in the trial court while Nejad's position was that the certified transcript was true, complete and correct. See OCGA § 15-14-5. The State did not file a motion to supplement the record pursuant to OCGA § 5-6-41 (f), but presented without objection testimony concerning the alleged deficiency in the trial transcript through cross-examination of Nejad and his three attorneys and direct examination of the prosecuting assistant district attorney. In response to the query of post-conviction counsel for Nejad as to the location of the colloquy between the trial judge and Nejad in the trial transcript, the State freely admitted it was not in the transcript and stated the State's assertion that the colloquy had taken place in open court without having been recorded. Two weeks after the evidentiary hearing, the parties submitted a stipulation that the trial judge had "reviewed his notes from Mr. Nejad's trial and stated that he does not have any indication in his notes that he ever advised Mr. Nejad of his rights to testify."

Because it is critical that the certified trial transcript reviewed by an appellate court speak the truth so that the appellate court can conduct its review with the knowledge that the transcript accurately reflects what took place in the trial court, Georgia law authorizes a trial court to conduct a hearing when a party contends the transcript does not fully disclose what took place and to "resolve the difference so as to make the record conform to the truth." OCGA § 5-6-41 (f). "Where the correctness of the record is called into question the matter is to be resolved by the trial court." *Patterson v. State*, 233 Ga. 724, 731 (213 SE2d 612) (1975). See also OCGA § 5-6-48 (d) (an appellate court may require a trial court to certify what transpired below which does not appear from the appellate record). The goal is that the case be decided according to true and complete facts as they occurred in the trial court. *Damani v. State of Ga.*, 284 Ga. 372 (2) (667 SE2d 372) (2008).

Nejad contends the failure of the State to file a motion to

ordinary circumstances, where not required by statute and the defendant possesses ordinary intelligence and is under no duress, the trial court need not inform the defendant of the right to testify). However, it has been suggested that trial courts should engage in such a colloquy as a prophylactic measure. See *Jenkins v. State*, 268 Ga. 468, 474 (491 SE2d 54) (1997) (Thompson, J., concurring). See also Timothy O'Neill, *Vindicating the Defendant's Constitutional Right to Testify at a Criminal Trial: The Need for an On-the-Record Waiver*, 51 U. Pitt. L. Rev. 809, 838 (to avoid the appearance of the trial court interfering with the right of the defendant to choose whether or not to testify, have defense counsel question the non-testifying defendant on the record in the presence of the trial court and outside the presence of the jury concerning the defendant's acknowledgment of his right to testify and his waiver thereof, or have the non-testifying defendant execute a written acknowledgment and waiver of the right to testify).

698

supplement the trial transcript pursuant to OCGA § 5-6-41 (f) precludes the trial court from effectively supplementing the trial transcript with a finding that the trial judge did inform Nejad that it was his decision whether or not to testify. It is true that the burden is on the party which contends the transcript does not fully disclose what transpired at trial to have the record completed at the trial court pursuant to OCGA § 5-6-41 (f). *Howe v. State*, 250 Ga. 811 (2) (301 SE2d 280) (1983). Where the transcript is not supplemented, the complaining party does not carry its burden of showing by the record the facts necessary to establish its point. *Thomas v. State*, 208 Ga. App. 367, 368 (430 SE2d 768) (1993). We cannot agree with Nejad's assertion that the filing of a written motion to supplement is a necessary prerequisite to a trial court's decision to make the record speak the truth. A filed motion would have highlighted the discrepancy the State saw in the transcript and would have authorized the trial court to hold a hearing on the subject. OCGA § 5-6-41 (f). In the case at bar, Nejad knew of the purported deficiency and participated in an evidentiary hearing centered, in part, on establishing the deficiency, without voicing an objection to the lack of a written motion having been filed. Two weeks after the hearing, Nejad joined the State in submitting a stipulation regarding the trial judge's recollection of events, again without objection to the presentation of the issue to the trial court for resolution. In effect, Nejad acquiesced in the State's presentation of its theory that the trial transcript was incomplete and in the State's effort to have the discrepancy resolved so as to make the record conform to the truth. The trial court conducted an evidentiary hearing regarding the conflict and resolved it by concluding that the trial judge had made Nejad aware of his right to testify and his right to decide whether he would testify. "[T]he trial court's adoption of the prosecutor's [testimony] was dispositive, and is not subject to our review." *Smith v. State*, 260 Ga. 274 (3) (393 SE2d 229) (1990).[4]

---

[4] Although the trial court's decision is not subject to appellate review, Nejad asserts that the assistant district attorney's testimony is not sufficient to support the trial court's finding because the assistant district attorney never testified as to what the trial judge stated when he addressed Mr. Nejad. While the assistant district attorney's words do not set forth the specific content of the "standard admonition" she testified was given by the trial judge, the questions propounded to her did. The assistant district attorney's testimony was in response to an inquiry whether she had any personal recollection if Nejad "was informed of his right to testify, specifically that the decision to testify was his and not the attorney's[,]" and, on cross-examination she was asked about her memory of the trial judge's "giving the law to Mr. Nejad explaining that it is Mr. Nejad's right whether to testify or not to testify, the decision belongs solely with Mr. Nejad. . . ." Consequently, there was evidence presented at the hearing that authorized the trial court to find that Nejad was informed of his right to decide whether to testify and that the decision to testify was his and not his attorney's. In addition, the trial transcript reflects that in preliminary instructions to the jury given in the presence of the

In effect, the trial transcript has been amended by the trial court's determination to show that Nejad was made aware of his right to testify and to have the final say in whether he exercised that right. In light of the finality of that decision, the Court of Appeals was not authorized to reverse the trial court's determination that Nejad had been advised of his right to testify by the trial judge.

Nejad points out that the trial transcript as certified by the court reporter is presumed to be true, complete and correct. OCGA § 15-14-5. It is true that the court reporter's certification gives a presumption of correctness to the certified transcript, but that presumption is not irrebutable. As noted above, OCGA §§ 5-6-41 and 5-6-48 provide means by which a purportedly-incomplete transcript may be amended and certified by the trial court: where a party contends the transcript does not fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court has a hearing and resolves the difference. OCGA § 5-6-41 (f). After an appeal has been filed, an appellate court may require the trial court to certify what transpired below which does not appear from the record on appeal. OCGA § 5-6-48 (d). Thus, the presumption of correctness of a certified transcript is subject to rebuttal.

OCGA § 15-14-5 also provides that a certified transcript's presumption of correctness is statutorily subject to "the right of the trial judge to change or require the correction of the transcript. . . ." Nejad notes it was not the trial judge who effectively changed the trial transcript, but the judge who heard the motion for new trial. See footnote 1, supra. Nejad acknowledges that the judge who presided over the trial recused himself from the case on Nejad's post-conviction motion, but contends the recusal does not prevent the recused judge from performing ministerial functions, one of which Nejad contends would be taking action pursuant to OCGA § 15-14-5. However, both federal and state courts have concluded that, as a general rule, the ministerial acts that a recused trial judge can perform are those necessary to have the case transferred to another judge. 13D Wright, Miller, Cooper & Freer, Federal Practice & Procedure, § 3550 (3d ed. 2008); *El Fenix de Puerto Rico v. The M/Y JOHANNY*, 36 F3d 136, 141 (1st Cir. 1994); *Douglas v. Douglas*, 143 N.H. 419, 427-428 (728 A2d 215, 221-222)

---

defendant immediately after the jurors were selected and sworn, the trial judge stated that "a defendant on trial may testify or not as he chooses." Furthermore, at the post-conviction hearing, one of Nejad's attorneys testified he had represented Nejad in a criminal prosecution in DeKalb County which had resulted in a directed verdict of acquittal prior to Fulton County's prosecution of Nejad, and to his practice as lead counsel of informing a defendant that it is his decision whether to testify at trial. At the hearing, Nejad denied his DeKalb attorney had informed him of his right to decide whether to testify in the DeKalb proceeding.

(N.H. 1999); *Payton v. State*, 937 S2d 462, 465 (Miss. App. 2006). See also *State v. Evans*, 187 Ga. App. 649 (1) (371 SE2d 432) (1988), overruled on other grounds, *State v. Smith*, 268 Ga. 75 (485 SE2d 491) (1997) ("A disqualified judge can take no judicial action in the case and any attempt at such action is a mere nullity."). Thus, the trial court rather than the trial judge was the proper judicial figure to supplement the certified trial transcript to reflect the truth of what occurred in the trial.

2. During the jury instructions concerning the two counts charging Nejad with aggravated assault with a deadly weapon, the trial court informed the jury that the crime is committed when the accused, with a deadly weapon, places another person in reasonable apprehension of immediately receiving a violent injury. The trial court then told the jury that "A pellet gun in the shape of an automatic weapon is per se a deadly weapon." The Court of Appeals ruled it was error to give the "per se" charge, reasoning that a pellet gun is not a per se deadly weapon and it was for the jury to resolve whether the manner and means by which it was used made it a deadly weapon. *Nejad v. State*, supra, 296 Ga. App. 163 (2).

A firearm is a deadly weapon as a matter of law. *Wyman v. State*, 278 Ga. 339 (4) (602 SE2d 619) (2004). A firearm pointed at a victim and reasonably appearing to the assault victim to be loaded is a deadly weapon as a matter of law, regardless of whether it is loaded and, under such a circumstance, the trial court does not err when it takes the issue of "deadliness" from the jury. *Adsitt v. State*, 248 Ga. 237 (6) (282 SE2d 305) (1981). See also *Veal v. State*, 191 Ga. App. 445 (2) (382 SE2d 131) (1989) (pistol loaded with blanks that is pointed at victim in conjunction with an unlawful demand is a deadly weapon as a matter of law). A pellet gun is a deadly weapon per se when the uncontradicted evidence is that it reasonably appeared to the victim against whom it was used to be deadly. *Clark v. State*, 191 Ga. App. 386 (3) (381 SE2d 763) (1989). In the case at bar, each of the two victims testified that Nejad pulled out a gun, pointed it at her and demanded she do as he said. Each victim testified she thought Nejad was going to shoot her. One of the victims described Nejad's weapon as looking like the Glock firearm carried by law enforcement officers. In light of the uncontradicted evidence that each victim perceived the weapon used by Nejad to be a gun that could be used to shoot her, the trial court did not err when it informed the jury that the pellet gun was a deadly weapon per se. Accordingly, the Court of Appeals erred when it ruled that the issue of the deadliness of the weapon was for the jury.

*Judgment reversed. All the Justices concur.*

DECIDED MARCH 15, 2010.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellant.
*Brian Steel*, for appellee.