**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 5, 2014**

# In the Court of Appeals of Georgia

A13A1666. WILMOTT v. THE STATE.

MCFADDEN, Judge.

A jury found Michael Wilmott guilty of the offenses of owning, operating or conducting a chop shop in violation of OCGA § 16-8-83 and removing or falsifying a vehicle identification number in violation of OCGA § 40-4-21, and he was convicted of these offenses. He argues on appeal that the jury returned mutually exclusive verdicts. The verdicts, however, were not mutually exclusive but were, at most, inconsistent verdicts that did not require reversal. Wilmott also argues that the trial court erred when, after the state rested, the trial court required him to indicate whether he intended to testify. The trial court, however, had the authority to engage in this colloquy with Wilmott, and the record does not show that the timing of the colloquy harmed him. Accordingly, we affirm.

1. *Jury verdicts.*

Wilmott argues that his conviction for operating a chop shop in violation of OCGA § 16-8-83 must be reversed because the jury's verdicts finding him guilty both of that offense and of falsifying a vehicle identification number under OCGA § 40-4-21 were mutually exclusive. See *Allaben v. State*, __ Ga. __, __ (2) (a) (5) (__ SE2d __) (Case No. S13A0949, decided Nov. 25, 2013) (finding, where there was at least a reasonable probability that the jury returned mutually exclusive verdicts for malice murder and reckless conduct, that malice murder conviction must be reversed, both verdicts must be set aside, and a new trial must be had on those counts). As detailed below, the verdicts were not mutually exclusive and do not require reversal.

In arguing that the verdicts were mutually exclusive, Wilmott reasons as follows. He was indicted for violating OCGA § 16-8-83 by owning, operating or conducting a chop shop in which he "knowingly alter[ed] a vehicle identification number on a [particular motorcycle] with the intent to misrepresent the identity of a motor vehicle[.]" Under OCGA § 16-8-83 (a), "[a]ny person who knowingly and with intent . . . [o]wns, operates, or conducts a chop shop . . . shall be guilty of a felony[.]" A "chop shop" is defined as

2

any building, lot, or other premise where one or more persons knowingly engage in altering, destroying, disassembling, dismantling, reassembling, or storing any motor vehicle or motor vehicle part known to be illegally obtained by theft, fraud, or conspiracy to defraud in order to either: (A) Alter, counterfeit, deface, destroy, disguise, falsify, forge, obliterate, or remove the identification, including the vehicle identification number of such motor vehicle or motor vehicle part, in order to misrepresent the identity of such motor vehicle or motor vehicle part or to prevent the identification of such motor vehicle or motor vehicle part; or (B) Sell or dispose of such motor vehicle or motor vehicle part.

OCGA § 16-8-82 (1).

Wilmott also was indicted for violating OCGA § 40-4-22 with respect to the same motorcycle. OCGA § 40-4-22 (a) makes it

unlawful to buy, sell, receive, dispose of, conceal, use, or possess any motor vehicle, or any part thereof, from which the manufacturer's serial numbers or other distinguishing numbers or identifying marks have been removed, defaced, covered, altered, or destroyed for the purpose of concealing or misrepresenting the identity of such motor vehicle.

The jury, however, found Wilmott guilty of the lesser included offense of violating OCGA § 40-4-21, which pertinently provides that "[a] person who wilfully removes

3

. . . or falsifies an identification number of a vehicle or an engine for a vehicle is guilty of a misdemeanor." OCGA § 40-4-21 (a).

Wilmott reasons that the jury's decision to find him guilty of the lesser offense of violating OCGA § 40-4-21 (a) means that the jury found he did *not* have the "purpose of concealing or misrepresenting the identity of [the] motor vehicle" required for the greater offense of violating OCGA § 40-4-22. Consequently, Wilmott argues, he could not have had the necessary intent "to misrepresent the identity of such motor vehicle" required to find him guilty of violating OCGA § 16-8-83 in the manner alleged in his indictment. For this reason, he argues that the jury returned mutually exclusive verdicts which the trial court should have treated as acquitting him of the charge that he violated OCGA § 16-8-83.

The verdicts returned by the jury, however, were not mutually exclusive. "Verdicts are mutually exclusive where a guilty verdict on one count logically excludes a finding of guilt on the other." *Turner v. State*, 283 Ga. 17, 20 (2) (655 SE2d 589) (2008) (citation and punctuation omitted). "(A) mutually exclusive verdict may be rendered in a particular case where the offenses or acts alleged in the indictment and underlying the [two] counts reflect that the jury, in order to find the defendant guilty on both counts, necessarily reached two positive findings of fact that

4

cannot logically mutually exist." *Flores v. State*, 277 Ga. 780, 783 (3) (596 SE2d 114) (2004) (citation and punctuation omitted). The two guilty verdicts returned by the jury in this case *can* be logically reconciled – a finding that a person, in violation of OCGA § 40-4-21, wilfully removed or falsified the identification number of a vehicle does not logically exclude a finding that the person, in violation of OCGA § 16-8-83, owned, operated or conducted a premise in which he knowingly altered a vehicle identification number with the intent of misrepresenting the vehicle's identity. The decisions in *Zant v. Stephens*, 462 U. S. 862, 881 (II) (103 SCt 2733, 77 LEd 235) (1983), and *Dunagan v. State*, 269 Ga. 590, 594-595 (3) (502 SE2d 726) (1998), to which Wilmott cites, do not support his claim that the jury in this case returned mutually exclusive verdicts; those decisions considered whether erroneous jury instructions were harmful.

Instead, Wilmott bases his argument on the fact that the jury did *not* find him guilty of the greater offense of violating OCGA § 40-4-22 (altering a vehicle identification number for the purpose of concealing the vehicle's identity). But that fact creates at most an inconsistency. "[T]he rule against mutually exclusive verdicts . . . is not implicated where . . . verdicts of guilty and not guilty are returned." *Turner*, 283 Ga. at 20 (2) (citation omitted). Accordingly,

5

[w]hile [Wilmott's] assertion of error speaks in terms of mutually exclusive verdicts, the basis of his argument is that the verdicts are inconsistent. In *Milam v. State*, 255 Ga. 560 (2) (341 SE2d 216) (1986), [the Supreme Court of Georgia] abolished the rule that inconsistent verdicts in irreconcilable conflict in criminal cases warranted reversal . . . , adopting the rationale set out by the [United States] Supreme Court in *United States v. Powell*, 469 U. S. 57 (105 SCt 471, 83 LE2d 461) (1984). . . . In *Powell*, the court noted that inconsistent verdicts could be the result of jury mistake, compromise, or lenity, but it is unknown whether the mistake, compromise, or lenity was exercised in favor of the defendant or the prosecution. In our [Supreme Court's] cases endorsing the abolition of the inconsistent verdict rule, [that Court has] determined it is not generally within the court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts.

Id. (citations and punctuation omitted).

There is "an exception to the abolition of the inconsistent verdict rule: when instead of being left to speculate about the unknown motivations of the jury the appellate record makes transparent the jury's reasoning why it found the defendant not guilty of one of the charges[.]" Id. at 20-21 (2). Wilmott, however, has neither argued that the exception applies in this case nor pointed to any part of the appellate record that illuminates the jury's reasoning. Instead, he merely speculates that the jury

6

"may have" found his testimony credible and, thus, mistakenly ascribed to him the intent required to find him guilty of the chop shop violation. This is exactly the type of speculation against which our Supreme Court has warned. See *Turner*, 283 Ga. at 20 (2).

In summary, although Wilmott characterizes the jury's verdicts as mutually exclusive, his challenge is actually predicated upon the inconsistent verdict rule, which has been abolished in Georgia. For that reason, we find no error. See *Milam*, 255 Ga. at 562 (2).

2. *Wilmott's decision to testify.*

After the state rested its case, but before Wilmott presented his case, the trial court engaged in a colloquy with Wilmott in which the trial court informed him of his right to testify, obtained from him a statement of his intent to testify, and determined that he had "made his decision to testify with a complete understanding of his rights." Wilmott argues that this constituted reversible error. We disagree.

Wilmott correctly asserts that in Georgia "there is no requirement that the trial court have an on-the-record colloquy with a non-testifying defendant in order to inform the defendant of the right to testify and to obtain a knowing and intelligent waiver of that right." *Sanford v. State*, 287 Ga. 351, 355 (4) 695 SE2d 579) (2010)

(citations omitted). Accord *State v. Nejad*, 286 Ga. 695, 695-700 (1) (690 SE2d 846) (2010); *Burton v. State*, 263 Ga. 725, 728 (6) (438 SE2d 83) (1994); *King v. State*, 194 Ga. App. 662, 664 (6) (391 SE2d 660) (1990) (physical precedent); *Coonce v. State*, 171 Ga. App. 20, 21 (318 SE2d 763) (1984). But Georgia law does not *preclude* a trial court from conducting such a colloquy. In fact, this Court has described such a colloquy as the "better practice," *Coonce*, 171 Ga. App. at 21 (2), and our Supreme Court has acknowledged that "it has been suggested that trial courts should engage in such a colloquy as a prophylactic measure." *Nejad*, 286 Ga. at 697 (1) n. 3 (citations omitted). Moreover, there are cases in Georgia that reflect such a colloquy occurring at the same time as the colloquy in this case – between the close of the state's case and the start of the defendant's case. See, e.g., *Thornton v. State*, 292 Ga. 796, 798 (2) (741 SE2d 641) (2013).

In this case, however, Wilmott's counsel expressly asked the trial court to "hold off" on having Wilmott state his intent to testify, "without making a commitment at [that] point[,]" on the ground that counsel was "just not sure that we want to commit to present [Wilmott] as a witness in this case. We might. I'd say there's a pretty good chance that we will, but we may not." In response, the trial court criticized counsel's use of the word "we," stressing that the decision to testify

8

belonged to Wilmott, not his counsel. The trial court then stated, "I need a response from your client at this time, sir. However, if you would like me to re-address these questions with him at the time prior to him testifying, I will do so." At that point Wilmott spoke up, indicating that he intended to testify.

"[T]he trial judge has a wide discretion in the handling of a trial." *Davis v. State*, 127 Ga. App. 76, 80 (3) (192 SE2d 538) (1972). But that discretion is not without limit; it cannot be exercised in an illegal, unjust or arbitrary manner. *Intl. Assn. of Machinists v. Street*, 215 Ga. 27, 40 (3) (108 SE2d 796) (1959), rev'd on other grounds, 367 U.S. 740 (81 SCt 1784, 6 LEd2d 1141) (1961); *Davis*, supra at 80 (3). Although the trial court in this case acted properly in instigating the colloquy with Wilmott about his intent to testify, we discern no reason from the record why the trial court should have continued with the colloquy and pressed Wilmott to state his intent once Wilmott's counsel indicated that Wilmott was not yet ready to do so. The trial court's actions undermined the relationship between Wilmott and his counsel and infringed upon Wilmott's ability to determine the manner in which he would present his case. Faced with the request to "hold off," the better practice would have been to postpone the colloquy until later in the trial.

Nevertheless, we need not decide whether the trial judge's decision to proceed with the colloquy in this case exceeded the limits of its discretion, because even if the decision constituted error, the record does not show that Wilmott was harmed. Although he argues that the trial court, "in requiring a declaration of intent to testify, gave the [s]tate an unfair advantage that the [s]tate was not entitled to have," the record reveals no such advantage. It was not a secret that Wilmott was contemplating testifying; before he announced his intent to testify, his counsel volunteered that information, stating that there was a "pretty good chance" the defense would call Wilmott as a witness. And the trial court made it clear that it would allow the defense to revisit the issue of Wilmott testifying. So, it does not appear that the trial court prevented Wilmott from changing his mind about testifying later in the proceedings.

"We will not reverse a case for error unless the error is shown to be harmful." *Craft v. State*, 254 Ga. App. 511, 515 (4) (563 SE2d 472) (2002) (citation and punctuation omitted). Accord *O'Neal v. State*, 288 Ga. 219, 223 (2) (702 SE2d 288) (2010). We find no harm in this case. See generally *Boothe v. State*, 293 Ga. 285, 289-290 (2) (b) (745 SE2d 594) (2013) (describing harmless error analysis).

*Judgment affirmed. Doyle, P. J., concurs. Boggs, J., concurs in the judgment only.*

10