[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14856

_____

D.C. Docket No. 1:12-cv-01502-TWT


ALI NEJAD,

Petitioner - Appellee,

versus

ATTORNEY GENERAL, STATE OF GEORGIA,

Respondent,

WARDEN,

Respondent - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 27, 2016)

Before TJOFLAT, MARCUS, and ROGERS,[*] Circuit Judges.

_____

[*] Honorable John M. Rogers, United States Circuit Judge for the Sixth Circuit, sitting by designation.

MARCUS, Circuit Judge:

A jury in Fulton County, Georgia, found Ali Nejad guilty of sexually assaulting two women on two separate occasions, for which he was sentenced to a total of thirty-five years in prison by the superior court judge. Pursuant to 28 U.S.C. § 2254, he petitioned for federal habeas relief on the ground that his trial counsel was ineffective because he failed to inform Nejad that he could testify in his own defense despite counsel's advice to the contrary. After conducting an evidentiary hearing, the state trial court rejected the claim, finding that Nejad could not establish prejudice because the trial judge had in fact advised Nejad of his right to testify. The Georgia Court of Appeals, an intermediate appellate court, rejected the trial court's determination, but the Georgia Supreme Court reinstated the trial court's finding and its ultimate determination rejecting the petitioner's Sixth Amendment ineffective assistance of counsel claim. The ball bounced back into the opposite court once again, when the federal district court rejected the state trial court's finding of fact, granted Nejad a writ of habeas corpus, and ordered Georgia to retry the petitioner within ninety days or to release him.

Georgia brought this rifle-shot appeal, challenging only the district court's decision to cast aside the state court's determination of fact. After thorough review and with the benefit of oral argument, we conclude that the trial court's factual finding was neither "based on an unreasonable determination of the facts in light of

2

the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), nor contradicted by "clear and convincing evidence," id. § 2254(e)(1). Moreover, the Georgia Supreme Court's Strickland determination was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Id. § 2254(d)(1). Accordingly, we reverse the judgment of the district court and remand with instructions to reinstate Nejad's convictions and sentence.

## I.

## A.

The essential facts and procedural history are these. In May 2005, Nejad was indicted by a Fulton County grand jury for the rape, aggravated sodomy, and aggravated assault with a deadly weapon of Linda Lankford; the possession of a firearm during commission of a felony; and the aggravated assault with a deadly weapon and two counts of aggravated sexual battery of Melissa Hoy. After a nine-day jury trial in December 2005, Nejad was convicted on all counts except the firearm possession count. He was represented by a privately retained trial team.

The evidence adduced at trial established, among other things, that, on May 11, 2004, Ms. Lankford was talking to Nejad at a gas station, and he offered to give her a ride to a hotel where she was staying. [1] She accepted the offer and the

---

[1] We take these facts from the Georgia Court of Appeals's decision. Nejad v. State (Nejad I), 674 S.E.2d 60 (Ga. Ct. App. 2009).

two set off in Nejad's SUV.  Once in the car, Nejad offered her $200 in exchange for sex; Lankford refused, telling Nejad that she was not a prostitute.  After purchasing baby wipes from a grocery store, Nejad drove Lankford to a secluded area and parked the SUV.  Nejad then pointed a gun at Lankford and demanded that she take off her clothes and put on a pair of pantyhose.  Thereupon, he forced her to perform oral sex on him while pointing the gun at the back of her head.  Nejad then had intercourse with her while pointing the gun at her face.  Afterwards, he ordered her out of the car while she was still naked.  She left with her clothes in her hands, got dressed, and ran to a nearby building, where she asked the people inside to call the police because she had been raped.

On June 5, 2004, Ms. Hoy -- the other victim -- was working as a prostitute.  She voluntarily entered Nejad's SUV after he offered her $150 to perform sexual acts.  He gave her thigh-high nylon stockings to wear and drove to a secluded area.  Nejad stopped the car, took out a backpack and a black gun, and told Hoy to get into the back seat.  Nejad then sexually battered her while holding the firearm.  Thereafter, he threw her out of the car.

Nejad stipulated that an assault kit performed on Lankford and semen found on Hoy's shirt contained his DNA.  When he was arrested, a plastic pellet gun resembling a Glock handgun was found in his car.  At the conclusion of the state's case-in-chief, the trial court granted Nejad's motion for a directed verdict on the

4

possession of a firearm count.  Nejad called three witnesses, two of whom offered an alibi for the night of the assault on Hoy.  Nejad did not, himself, testify.  On December 16, 2005, the jury found Nejad guilty on all of the remaining counts.  Two weeks later, the trial court sentenced him to a total of thirty-five years in prison.

## B.

Nejad retained new counsel and moved for a new trial, raising three claims for relief: (1) the trial court erroneously charged the jury that a pellet gun was a deadly weapon; (2) a juror failed to disclose that she was a rape victim, which would have provided a basis to excuse her for cause; and, most pertinent to this appeal, (3) trial counsel was ineffective for failing to advise him that he had a right to testify in his own defense.  Nejad also moved to recuse the trial judge because he had written a letter to the Superior Courts Sentence Review Panel urging that the Panel not reduce or alter Nejad's sentence.  The trial judge granted the motion to recuse, and the balance of the issues was transferred to another division of the court.

A central point in dispute concerned whether the trial court had, at some point during the trial, advised Nejad that he had a right to testify in his own defense and that his own attorneys could not prevent him from doing so.  The state insisted that a testimonial colloquy between the trial court and Nejad had actually occurred

during the trial and, therefore, Nejad could not establish the prejudice prong of Strickland even if defense counsel failed to inform him of his right to testify. The trial transcript, however, did not record any colloquy between Nejad and the trial court regarding the petitioner's right to testify, but it did reflect that many off-the-record discussions were conducted during the last day and a half of the trial. The parties also filed a joint stipulation in state court, which provided that they had contacted the trial judge, who reviewed his notes from the trial and said that they did not reflect any indication that he advised Nejad of his right to testify.

In order to resolve this and other factual disputes, the trial court conducted an extensive evidentiary hearing. All three privately retained attorneys who originally represented Nejad at trial testified. First, Michael Trost said that he had previously represented Nejad in another criminal trial in DeKalb County, Georgia, that resulted in a directed verdict of acquittal at the close of the state's case. He noted that it was his regular "practice and procedure to advise clients" that they were responsible for making the ultimate decision whether or not to testify. He was not asked whether he had advised Nejad of his right to testify in the DeKalb County case. But, in this case, he had no "independent recollection" of instructing Nejad to that effect. He added, the trial team had generally agreed it was not in Nejad's interest to testify, and he did not recall anyone telling Nejad he could override their advice. Trost also said he "originally" thought the trial court had

6

advised Nejad of his testimonial rights.  But, after examining the transcript, he said he may have incorrectly assumed the colloquy had occurred because "that's consistent with normal practice."

Similarly, defense counsel Ash Joshi testified that he did not tell Nejad it was Nejad's right to decide whether or not to testify, and that he had no knowledge whether anyone else had so advised Nejad.  He could not remember whether the trial judge informed Nejad of his right to testify.

Finally, lead defense counsel Manubir Arora testified that he took over Nejad's case six weeks before trial.  He only agreed to work on the case on the understanding that he would "rule with an iron fist" and Nejad would "have to listen to what" he said.  Arora said that, shortly before trial, Nejad "asked to testify," but Arora responded "absolutely not."  However, Arora prepared Nejad to testify just in case the trial went south and he needed to take the stand.  Nejad asked Arora many times about testifying, but Arora believed the trial was going well and, therefore, the defendant would not have to testify.  Arora explained that he should have said some other things that were required by the law, but instead he "simply ordered" Nejad not to testify. Arora also had a "specific memory" that the trial judge never advised Nejad of his right to testify.  Moreover, he opined, there was no "break [in the transcript] where the court reporter could have forgotten something as critical as the judge making the defendant stand up and advising him

7

of his rights." Defense investigator Nicholas McKnight also was called to testify. He recalled attending a meeting where Nejad told Arora that he wanted to testify, but Arora responded that "under no circumstance was [Nejad] going to testify at his trial."

Finally, Nejad testified on his own behalf and explained that he had wanted to take the witness stand, but his lawyers did not allow him to do so. He added that nobody told him, in this case or in the earlier DeKalb County prosecution, that he could overrule his lawyer's advice and testify on his behalf. Nejad also said that the judge never told him that it was his decision whether or not to testify, but if he had been so informed by the court, he would have testified on his own behalf. Nejad added, he would have explained that he picked up the victims, who were working as prostitutes, and that they consented to engage in sex for money. Nejad denied pulling a gun on either Ms. Hoy or Ms. Lankford, and surmised that the women must have seen the pellet gun he kept in his glove compartment by snooping around when he wasn't in the car.

The lead trial prosecutor, Linda Dunikoski, testified on behalf of the state. Her account collided with Arora's. She was asked whether she had "any personal recollection about whether [Nejad] was informed of his right to testify, specifically that the decision to testify was his and not the attorney's." She answered, "Yes," observing that she had "a very, very clear recollection" that he had been informed

8

of his right to testify.  Indeed, she "distinctly remember[ed] looking over at [Nejad], who had stood up; his three attorneys were seated, and [the trial judge] read[] him the standard admonition about testifying or not testifying because [she] was going to have to cross[-examine] him."  She "was holding [her] breath looking over at [Nejad] waiting to see what his answer was going to be to [the trial judge] about whether he was going to testify or not."  She testified that Nejad said, "No, I'm not going to testify," and sat down.  Notably, she had "a very clear memory of that because" it was her first time serving as lead counsel on a rape case, she knew that she would have to cross-examine the defendant if he testified, and she was very nervous.  Although she did not have a specific recollection that the court reporter was absent during the trial court's colloquy with Nejad, she remembered "several occasions" during the trial when the court began proceedings without realizing the court reporter was not in the room.

The trial court denied the motion for a new trial in a written order.  After summarizing the testimony taken at the evidentiary hearing, the court concluded Nejad had "failed to prove [Strickland] prejudice from any failure of trial counsel to properly define his right to testify."  It unambiguously found as a fact that "the credible evidence at the hearing show[ed] that Mr. Nejad was in fact so informed by the trial court that the ultimate decision whether to testify was his alone, made

9

after hearing the advice of his attorneys." The court rejected Nejad's other two claims without discussion. Nejad appealed.

## C.

The Georgia Court of Appeals reversed and remanded for a new trial, finding that Nejad's ineffective assistance claim and jury instruction challenge were meritorious. Nejad v. State (Nejad I), 674 S.E.2d 60 (Ga. Ct. App. 2009). Based on Nejad's and his trial attorneys' testimony at the evidentiary hearing, the intermediate appellate court determined that "trial counsel's refusal to allow Nejad to testify and failure to advise Nejad of his right to testify constituted deficient performance." Id. at 64. Moreover, after evaluating Nejad's proffer, the court concluded Nejad had been prejudiced by counsel's error. Id. at 64-65. The court also held the trial court's jury instruction regarding the pellet gun was erroneous, but declined to address Nejad's jury selection claim. Id. at 65.

The state petitioned the Georgia Supreme Court for certiorari review. The court granted the petition and then unanimously reversed the Court of Appeals's decision. State v. Nejad (Nejad II), 690 S.E.2d 846 (Ga. 2010). The Georgia Supreme Court explained that, when a party claims that the trial record does not accurately reflect the proceedings below, "Georgia law authorizes a trial court to conduct a hearing . . . to 'resolve the difference so as to make the record conform to the truth.'" Id. at 849 (quoting O.C.G.A. § 5-6-41(f)). In denying Nejad's

motion for a new trial, Georgia's high court determined the trial court had "effectively supplement[ed] the trial transcript with a finding that the trial judge did inform Nejad that it was his decision whether or not to testify." Id. And significantly, under Georgia law, "[t]he trial court's adoption of the prosecutor's [testimony] was dispositive, and is not subject to [appellate] review." Id. at 850 (quoting Smith v. State, 393 S.E.2d 229 (1990)).[2]   Therefore, "the Court of Appeals was not authorized to reverse the trial court's determination that Nejad had been advised of his right to testify by the trial judge." Id.

In a footnote, the Georgia Supreme Court, although reiterating that "the trial court's decision [was] not subject to appellate review," nevertheless addressed Nejad's argument that "the assistant district attorney's testimony is not sufficient to support the trial court's finding because the assistant district attorney[] never testified as to what the trial judge stated when he addressed Mr. Nejad." Id. n.4. While acknowledging that "the assistant district attorney's words do not set forth the specific content of the 'standard admonition' she testified was given by the trial judge," it explained that, fairly read in light of the questions asked, the trial prosecutor's testimony "authorized the trial court to find that Nejad was informed of his right to decide whether to testify and that the decision to testify was his and

---

[2] O.C.G.A. § 5-6-41(g) provides that, "[i]n case of the inability of the parties to agree as to the correctness of [the trial] transcript, the decision of the trial judge thereon shall be final and not subject to review." (emphasis added).

not his attorney's." Id. "In addition," the court noted, at the start of the trial and in Nejad's presence, the trial court instructed the jury that "a defendant on trial may testify or not as he chooses." Id. (quotation marks omitted). "Furthermore," it observed, Trost testified that "he had represented Nejad in a criminal prosecution in DeKalb County which had resulted in a directed verdict of acquittal prior to Fulton County's prosecution of Nejad, and to his practice as lead counsel of informing a defendant that it is his decision whether to testify at trial." Id.

The Georgia Supreme Court rejected Nejad's claim that the transcript was conclusive proof of what occurred at trial, explaining that, while certified transcripts are presumptively correct under state law, "the presumption of correctness of a certified transcript is subject to rebuttal." Id. at 850. It further determined that state law authorized a new judge to amend the transcript even though he had not presided over the trial. Id. at 850-51. The Georgia Supreme Court also concluded the Court of Appeals had erred in finding the trial court's deadly weapon instruction incorrect as a matter of state law. Id. at 851. Thus, it reversed the judgment of the Court of Appeals. Id.

On remand, the Georgia Court of Appeals "vacate[d] [its] earlier opinion and adopt[ed] the judgment of the Supreme Court as [its] own" with respect to Nejad's ineffective assistance and jury instruction claims. It also concluded that his final claim relating to jury selection was without merit and thus affirmed his

12

convictions and sentence.  Nejad v. State, 700 S.E.2d 886, 887-88 (Ga. Ct. App.

2010) (footnote omitted).  The Georgia Supreme Court declined discretionary

review on Nejad's jury selection claim, Nejad v. State, No. S11C0163 (Ga. Feb. 7,

2011), and the United States Supreme Court denied his petition for a writ of

certiorari, Nejad v. Georgia, 132 S. Ct. 101 (2011).

## D.

On April 30, 2012, Nejad filed the instant petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the

Northern District of Georgia, raising the same three claims for relief.  The district

court granted relief on the ineffective assistance of counsel claim, first determining

that the evidence showed trial counsel's performance was deficient.

Turning to prejudice, the district court recognized that the state court's

factual finding that the trial judge had advised Nejad of his testimonial rights "is

entitled to deference."  Nevertheless, it concluded that the finding was an

unreasonable determination of the facts.  First, the court offered, the transcript did

not reflect the trial judge advising Nejad of his rights.   Next, it said, "the

testimony of all three defense attorneys contradicted -- with varying degrees of

force -- the State's contention that the trial judge fully advised the Defendant of his

right to testify."  Moreover, the trial judge's notes did not reflect whether he

advised Nejad of his right to testify.  The district court added that it was

"objectively unreasonable" to rely on the prosecutor's testimony because she was young, this was her first big trial, it was about to blow up in her face, and thus her testimony was "unreliable."

Finally, the district court determined that, if Nejad had been advised of his right to testify, there was a reasonable probability that he would have been acquitted. Accordingly, it granted the writ of habeas corpus, vacated the petitioner's conviction, and ordered Georgia to afford him a new trial within ninety days or release him.

Georgia filed a timely notice of appeal. In September 2015, this Court vacated the district court's judgment without prejudice and remanded the case for the court to adjudicate the remaining grounds asserted in Nejad's petition. Thereafter, the district court denied relief on Nejad's two remaining claims, but reaffirmed its ruling on the ineffective assistance claim. This timely appealed followed. The only issue presented in this appeal is the claim of ineffective assistance of counsel.

## II.

We review the grant of a writ of habeas corpus de novo. McNair v. Campbell, 416 F.3d 1291, 1297 (11th Cir. 2005). The district court's factual findings are reviewed for clear error, while mixed questions of law and fact are

14

reviewed <u>de novo</u>.  <u>Id.</u>  An ineffective assistance of counsel claim is a mixed question of law and fact subject to <u>de novo</u> review.  <u>Id.</u>

Because Nejad filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which "establishes a highly deferential standard for reviewing state court judgments."  <u>Parker v. Sec'y for Dep't of Corr.</u>, 331 F.3d 764, 768 (11th Cir. 2003).  Under AEDPA, a person in custody pursuant to the judgment of a state court shall not be granted habeas relief on a claim "that was adjudicated on the merits in the State court proceedings" unless the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"[C]learly established Federal law" under § 2254(d)(1) refers to the "holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision."  <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000) (quotation marks omitted).  "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable

15

facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (alterations in original) (quoting Williams, 529 U.S. at 413), cert. denied, 136 S. Ct. 43 (2015). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (alteration in original) (quoting Williams, 529 U.S. at 413).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). Instead, AEDPA requires that we accord the state court substantial deference. "If reasonable minds reviewing the record might disagree about the finding in question," we must yield to the state court's factual determination. Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted and alteration adopted). "AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)). "Clear and convincing evidence is a 'demanding but not insatiable' standard, requiring proof that a claim is highly probable." Bishop v. Warden, GDCP, 726 F.3d 1243, 1258 (11th Cir. 2013) (quoting Ward v. Hall, 592 F.3d 1144, 1177 (11th Cir. 2010)). "[H]ighly probable" is a standard that requires

16

"more than a preponderance of the evidence but less than proof beyond a reasonable doubt." Ward, 592 F.3d at 1177 (quotation marks omitted).

Under 28 U.S.C. § 2254(d), we review the Georgia Supreme Court's decision rejecting Nejad's Strickland claim, which was "the highest state court decision reaching the merits of the petitioner's claim." Kokal v. Sec'y, Dep't of Corr., 623 F.3d 1331, 1345 (11th Cir. 2010); see also Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir. 2008). In reviewing that court's ultimate merits determination, we also apply AEDPA's presumption of correctness to factual findings by the state trial court that were adopted or relied on by the state high court. See Bui v. Haley, 321 F.3d 1304, 1312-14 (11th Cir. 2003); see also Hodges v. Att'y Gen., State of Fla., 506 F.3d 1337, 1347 n.2 (11th Cir. 2007) (explaining that AEDPA deference applies "[r]egardless of whether we consider the finding of voluntariness to have originated in the trial court or in the Florida Supreme Court").

### III.

### A.

It is by now abundantly clear that a criminal defendant has a fundamental right to testify on his own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 52 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). That right "cannot be waived either by the trial court or by defense counsel," and a

17

"criminal defendant cannot be compelled to remain silent by defense counsel."
Teague, 953 F.2d at 1532.  We analyze Nejad's claim that "defense counsel never informed [him] of the right to testify, and that the ultimate decision belong[ed] to [Nejad]," as a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).  Teague, 953 F.2d at 1534.

In order to establish a claim for ineffective assistance of counsel under the Sixth Amendment, Nejad must show both that (1) his counsel's performance was deficient and "fell below an objective standard of reasonableness," and that (2) the deficient performance prejudiced his defense.  Strickland, 466 U.S. at 687-88.  For the deficient performance prong of Strickland, we are obliged to determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.  "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide."  Teague, 953 F.2d at 1533.  "Where defense counsel has not informed the defendant of his right to testify, defense counsel has not acted within the range of competence demanded of attorneys in criminal cases."  Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1129 (11th Cir. 2012) (quotation marks omitted and alteration adopted).

18

"Under Strickland, a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Porter v. McCollum, 558 U.S. 30, 40 (2009) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. We have recognized that "[t]he testimony of a criminal defendant at his own trial is unique and inherently significant" because, "[w]hen the defendant testifies, the jury is given an opportunity to observe his demeanor and to judge his credibility firsthand." Nichols v. Butler, 953 F.2d 1550, 1553-54 (11th Cir. 1992). The defendant's testimony is of "prime importance" when "the very point of a trial is to determine whether an individual was involved in criminal activity." Id. at 1554 (internal quotation marks omitted).

Under AEDPA, "[t]he question 'is not whether a federal court believes the state court's determination under the Strickland standard 'was incorrect but whether that determination was unreasonable -- a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro, 550 U.S. at 473). "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

**B.**

19

We begin our analysis by assuming that Nejad's trial counsel did not inform him of his right to testify and that this amounted to deficient performance under Strickland. See Morris, 677 F.3d at 1129. Thus, we proceed directly to the prejudice inquiry. See Strickland, 466 U.S. at 697.

We start with the trial court's factual finding -- which, the Georgia Supreme Court unambiguously said, was "not subject to [appellate] review," Nejad II, 690 S.E.2d at 850 -- that "the credible evidence at the hearing show[ed] that [] Nejad was in fact . . . informed by the trial court that the ultimate decision whether to testify was his alone, made after hearing the advice of his attorneys." As we see it, the trial court logically had to make two interrelated findings in order to reach that conclusion. First, because the court reporter's certified transcript does not show any conversation on the subject, the court had to find that the transcript did not completely and accurately capture the trial proceedings. Second, the court had to determine that the prosecutor's testimony was more credible than that of the other witnesses at the evidentiary hearing on the motion for a new trial. Each of these findings is reasonable in light of the state court record.

For starters, the trial court could reasonably have determined that the trial transcript did not reflect everything that was said during the trial. Like federal

law,[3] Georgia law imbues a certified trial transcript with a presumption of completeness and correctness. See O.C.G.A. § 15-14-5. Indeed, transcripts would be of little value in appellate proceedings without such a presumption. But it is only a presumption, and, consistent with courtroom experience and common sense, the presumption of correctness is "subject to rebuttal." Nejad II, 690 S.E.2d at 850.[4] In this case, the transcript explicitly made note of eight off-the-record discussions and many more recesses and pauses in the few hours of proceedings between the close of the prosecution's case-in-chief and the close of evidence, which is when we would expect a judge to advise the defendant of his right to testify. There are also at least three missing pages from the trial transcript during that same timeframe. Moreover, the prosecutor testified that there were several times throughout the trial when the court began proceedings before noticing the court reporter was absent, and her testimony was uncontroverted on that point. In light of the many off-the-record discussions, recesses, and pauses noted in the transcript, as well as the prosecutor's unrebutted testimony, it would have been manifestly unreasonable to treat the trial transcript as reflecting every word that

---

[3] 28 U.S.C. § 753(b) ("The transcript in any case certified by the reporter or other individual designated to produce the record shall be deemed prima facie a correct statement of the testimony taken and proceedings had.").

[4] See also O.C.G.A. § 5-6-41(f) ("Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth.").

was said during the trial.  Therefore, the trial court's decision to look beyond the transcript to determine whether Nejad was advised of his right to testify was reasonable.[5]

We are left, then, with a straightforward "swearing match" that required the trial court "to make a credibility choice and resolve the dispute" between the conflicting testimony adduced at the evidentiary hearing.  See Collier v. Turpin, 177 F.3d 1184, 1193-94 (11th Cir. 1999).  "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."  Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842,

---

[5] On this point, the district court also determined that the state courts could not look beyond the trial transcript because, in its view, the state had not properly followed Georgia's procedures for supplementing a transcript.  It further held that the Georgia Supreme Court was "objectively unreasonable" to hold that "by participating in" the evidentiary hearing on his motion for a new trial, Nejad "acquiesced to the court adopting the position taken by" the state regarding what occurred in the unrecorded portions of the proceedings.  The district court misunderstood its role on federal habeas review and, moreover, misread the state supreme court's opinion.  On habeas review, a federal court cannot revisit a state court's interpretation of its own procedural rules.  See Landers v. Warden, Atty. Gen. of Ala., 776 F.3d 1288, 1296 (11th Cir. 2015) ("If the Alabama state habeas court violated Alabama state law, that is for the Alabama appellate courts to determine -- unless the fact-finding procedure itself violated federal law[.]").

What's more, the Georgia Supreme Court did not hold that Nejad had acquiesced in the state's position that he had been advised of his right to testify.  Rather, it held that he had waived any objection to the state's failure to follow the usual procedures for amending the transcript.  In the court's own words, "Nejad acquiesced in the State's presentation of its theory that the trial transcript was incomplete and in the State's effort to have the discrepancy resolved so as to make the record conform to the truth."  Nejad II, 690 S.E.2d at 850 (emphasis added).  The Georgia Supreme Court's determination that Georgia's procedural rules were sufficiently followed -- and that Nejad waived any objection to noncompliance with those procedures under state law -- is not subject to review in this collateral federal proceeding.

845 (11th Cir. 2011).  "Federal habeas courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Id. (quotation marks omitted).  The deference compelled by AEDPA "requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations."  Turner v. Crosby, 339 F.3d 1247, 1273 (11th Cir. 2003) (quotation omitted).  Instead, "[i]n the absence of clear and convincing evidence, we have no power on federal habeas review to revisit the state court's credibility determinations."  Bishop, 726 F.3d at 1259 (emphasis added).

Here, the trial court was presented with squarely conflicting testimony on the critical factual dispute.  On the one hand, both Arora and Nejad testified unequivocally that the trial judge never instructed Nejad of his right to testify.  On the other hand, the prosecutor swore she had a "very, very clear recollection" of exactly the opposite.  Plainly, somebody was -- to use the district court's generous characterization -- engaged in "wishful thinking" or afflicted by an "inaccurate memory.  Having listened to the testimony live and observed the demeanor of the witnesses, the trial court credited the prosecutor's testimony.  Unless there is clear and convincing evidence in the record to rebut this credibility judgment, we are powerless to revisit it on federal habeas review.  See id.  Nejad points to three categories of evidence that, in his view, severely undercut the state court's decision

23

to trust the prosecutor over Nejad and his attorney: the trial transcript, other testimony adduced at the evidentiary hearing, and potential reasons for doubting the prosecutor's credibility. We are unpersuaded.

To discredit the prosecutor's testimony, Nejad, like the district court, relies first and foremost on the absence of any testimonial colloquy in the transcript. Indeed, the district court identified the trial transcript as the "most important[]" evidence supporting its decision to discard the state court's factual finding. But, as we've already explained, the trial transcript does not conclusively resolve the matter because, as the state trial court obviously found, the transcript failed to capture the entirety of the proceedings. It is for that reason that the trial court looked to resolve conflicting testimony in order to decide what happened in the unrecorded portions.

Next, Nejad contends, the district court correctly found that "overwhelming evidence" in the record showed he was never advised of his right to testify. But, as we see it, the evidence was not so one-sided. There were only three witnesses who took a definitive stance on this central disputed issue. The prosecutor was certain Nejad had been advised of his rights by the court, and Nejad and Arora were certain he had not been. The remaining three witnesses who were in the courtroom during trial -- two members of the defense team and the trial judge -- did not offer much helpful evidence on this point. Trost initially thought the trial court had

24

advised Nejad of his rights, but then attributed that to a mistaken recollection once he saw it was not in the transcript. Joshi could not remember whether it had occurred. And the parties stipulated that the trial judge's notes did not indicate whether he had advised Nejad of his right to testify. With one witness swearing to one version of events, two witnesses swearing to the opposite, and three witnesses unable to recall one way or the other, we can't say the evidence overwhelmingly favored Nejad's position.

Third, Nejad says the district court was right to conclude that the prosecutor's testimony "was unreliable and it was objectively unreasonable for the state courts to rely upon her testimony rather than the certified transcript." The district court offered two reasons for discounting the prosecutor's credibility, neither of which amounts to the "clear and convincing" evidence necessary to discard the state court's credibility determination. First, it explained, the prosecutor's "memory conflicted with the certified trial transcript on at least three points."[6] We've already explained that the trial court could reasonably have

---

[6] The district court may have overstated the weight of the evidence on this point. The three contradictions it identified were: "(1) whether the trial judge advised the Defendant of his right to testify; (2) whether a juror stated during voir dire that she had been raped; and (3) whether there was a stipulation about DNA evidence." The prosecutor's testimony on the second issue was corroborated by the juror in question, who testified that she "thought she had revealed during voir dire that she had been raped and she did not think that she would get picked for the jury for that reason." Moreover, with respect to the DNA stipulation, we cannot find any testimony by the prosecutor about a DNA stipulation at the evidentiary hearing, and the parties have not mentioned this alleged contradiction on appeal. In any event, we note that the Georgia
(continued on next page)

25

concluded that the transcript was not a complete reflection of the state proceedings. The trial court was not required to completely disregard the prosecutor's testimony just because she claimed to remember things that were unrecorded, especially where the transcript explicitly noted so many unrecorded proceedings. Second, the district court said, the trial court shouldn't have credited the prosecutor's testimony because she "was a young prosecutor whose first big trial was about to blow up in her face." If so, like any interested witness, her testimony had to be evaluated in light of all of the circumstances -- including that this was her first big trial and that she would be required to cross-examine the defendant if he chose to take the witness stand. But a federal court engaged in habeas review is not empowered to second guess a state court's credibility determination based on speculation about the interests of a witness "whose demeanor has been observed by the state trial court, but not by [the federal court]." Consalvo, 664 F.3d at 845. The freewheeling credibility inquiry engaged in by the district court is inconsistent with the limited scope of federal review under AEDPA.

What's more, it seems to us that the district court's rationale -- that interested witnesses should not be credited -- applies with equal, if not greater force to the testimony on the other side of the ledger. Of all the witnesses, Nejad

Court of Appeals accepted, without discussion, that the parties had agreed to a stipulation about DNA evidence. See Nejad I, 674 S.E.2d at 62.

had (and has) the strongest interest in the outcome of the new trial proceeding -- after all, he's been sentenced to serve thirty-five years in prison.  And, in addition to the interest that any lawyer would have in helping his client, Arora testified that he "put [his] life into this case," had no other ongoing practice during the trial, and "put night and day into this case backwards and forwards."  Since all of the witnesses who offered definite testimony on the disputed issue had an interest in the outcome of the proceeding, we can't fault the trial court for siding with an interested witness.  The fact that the prosecutor was personally involved in prosecuting Nejad does not render it "highly probable" that she was less credible than the other witnesses.  Bishop, 726 F.3d at 1258.  All told, Nejad has not identified clear and convincing evidence that undercuts the prosecutor's testimony, so we must defer to the state court's decision to credit her version of events.  See id.

Beyond the state court's credibility determination, Nejad contends the district court correctly concluded that there was "no evidence" to support the trial court's finding that the trial judge told Nejad "the ultimate decision whether to testify was [Nejad's] alone, made after hearing the advice of his attorneys."  He insists that the prosecutor's testimony, even if credited, is too vague to establish exactly what the trial court told Nejad.  We're unpersuaded.  The Georgia Supreme

Court already considered and rejected this argument, accurately summarizing the prosecutor's testimony in the following manner:

> While the assistant district attorney's words do not set forth the specific content of the "standard admonition" she testified was given by the trial judge, the questions propounded to her did.  The assistant district attorney's testimony was in response to an inquiry whether she had any personal recollection if Nejad "was informed of his right to testify, specifically that the decision to testify was his and not the attorney's," and, on cross-examination she was asked about her memory of the trial judge's "giving the law to Mr. Nejad explaining that it is Mr. Nejad's right whether to testify or not to testify, the decision belongs solely with Mr. Nejad. . . ."  Consequently, there was evidence presented at the hearing that authorized the trial court to find that Nejad was informed of his right to decide whether to testify and that the decision to testify was his and not his attorney's.

Nejad II, 690 S.E.2d at 850 n.4 (alterations adopted).  We agree with the state high court that, in light of the questions she was asked, the prosecutor's testimony can reasonably be read to support the trial court's finding that Nejad was told he could overrule his attorney's advice and choose to testify.[7]

---

[7] Moreover, as noted by the Georgia Supreme Court, see Nejad II, 690 S.E.2d at 850 n.4, there was additional evidence tending to show that, at the time of this trial, Nejad knew he held the ultimate decision whether to testify.  First, Trost testified that he had previously represented Nejad in a criminal trial and that it was his regular "practice and procedure to advise clients" that they held the ultimate decision whether they would testify.  We've previously found an attorney's testimony about her regular practice and procedure of informing defendants of their right to testify sufficient to support a finding that the attorney acted consistently with that practice.  See McGriff v. Dep't of Corr., 338 F.3d 1231, 1237-38 (11th Cir. 2003) (affirming district court's finding that defendant had been told of his right to testify based on attorney's testimony that "her ordinary practice was to advise her clients as to the consequences of testifying, and she never prevented clients from taking the stand").  Moreover, at the beginning of Nejad's trial and in Nejad's presence, the court instructed the jury that "a defendant on trial may testify or not as he chooses."

Accepting the state trial court's finding of fact that Nejad was informed by the trial judge that he had the right to testify and his lawyers could not overrule his exercise of that right -- as AEDPA requires that we must -- we conclude that the Georgia Supreme Court reasonably applied <u>Strickland</u> and its progeny.  If the trial judge told Nejad that "the ultimate decision whether to testify was his alone, made after hearing the advice of his attorneys," then Nejad knew he could testify, regardless of what his attorneys told him.[8]  At the very least, "fairminded jurists could disagree," <u>Harrington</u>, 562 U.S. at 102, as to whether there is a reasonable probability that counsel's failure to tell him the same thing affected his decision whether to testify.  Thus, the Georgia Supreme Court could reasonably have concluded there was no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

---

[8] Nejad admitted he would have testified if the trial court had instructed him that he could overrule Arora's advice.  Nevertheless, he seems to suggest that, in view of Arora's insistence that he not testify, the trial court's colloquy would have been insufficient to protect his rights because he still would have felt barred from testifying.  In certain circumstances -- for example, where an attorney "threaten[s] to withdraw during a trial in order to coerce the defendant to relinquish his fundamental right to testify," <u>Nichols</u>, 953 F.2d at 1553 -- an attorney's conduct <u>might</u> prejudice the right to testify even though the trial court instructs the defendant that he holds the ultimate decision on that matter.  But in this case, while Arora may have forcefully told Nejad that he would not testify, there is no evidence that he threatened to withdraw or otherwise coerced Nejad when it came time to testify.

The long and short of it is, the state courts reasonably determined the facts and reasonably applied federal law to those facts in rejecting Nejad's ineffective assistance of counsel claim.  Accordingly, we REVERSE the district court's grant of habeas corpus relief and REMAND this case with the instruction that the district court reinstate Nejad's convictions and sentence.

REVERSED and REMANDED with instructions.